UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN PABLO THIERIOT,

                            Plaintiff,

        -against-                                23-CV-1875 (JGLC)

WILLIAM LAGGNER,                          **OPINION AND ORDER**

                            Defendant.

JESSICA G. L. CLARKE, United States District Judge:

      Under the terms of a settlement agreement in another case, non-party Halsey Minor was entitled to half of the first $750,000 of proceeds of any sales of a company's common stock held by Defendant William Laggner. Minor executed a contract assigning this right to Plaintiff Juan Pablo Thieriot, who brings this action in his capacity as assignee. Defendant sold 40,000 of his shares for $280,000. Plaintiff brings this action against Defendant for his half of the proceeds and moves for summary judgment awarding him $140,000 in damages. Defendant cross-moves for summary judgment, arguing that the assignment from Minor to Plaintiff was invalid, that the sale of the shares has not been consummated, and that the case should be dismissed because other parties to the settlement agreement should have been joined to this litigation.

      Well-established New York contract law principles foreclose Defendant's attempt to pocket the money from the sale without paying Plaintiff his share. The Court finds that the assignment is valid and that the sale has been consummated, which triggers Defendant's obligation to pay Plaintiff $140,000. The Court finds it proper to resolve the instant dispute without the need to drag non-parties into this litigation. For the reasons stated herein, Plaintiff's motion for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED.

## BACKGROUND

The Court sets forth the relevant factual background and procedural history.

### A. The Settlement Agreement

On May 16, 2019, Defendant and non-parties David Bechtel, Outpost Capital Management, LLC, and Minor entered into a Settlement Agreement in an unrelated action. ECF No. 79 ¶ 1; ECF No. 62-3 (the "Settlement Agreement"). Pursuant to the Settlement Agreement, 4,843,390 shares of common stock of Bitreserve, Ltd. (now "Uphold Ltd." or "Uphold"), were transferred from Minor to Defendant. ECF No. 75 ¶ 3. The 4,843,390 shares of Uphold (the "Laggner Shares") are the only shares of common stock of Uphold that Defendant has individually held title to since January 1, 2022. ECF No. 66 ¶ 4; *see also* ECF No. 62-2 (Defendant's share certificate for the 4,843,390 shares).

The terms of the Settlement Agreement gave Minor the right to receive half of the first $750,000 of proceeds of any sales of the Laggner Shares by Defendant. Settlement Agreement § 2(e)(i). This term provided that Minor "shall only be entitled to receive any proceeds upon the consummation of a sale of the Laggner Shares." *Id*. Minor's rights under the Settlement Agreement were assignable only with the prior written consent of all other parties. *Id*. § 10 ("No Party shall assign, delegate or transfer to any person or entity its rights or responsibilities under this Settlement Agreement without the prior written consent of all other Parties.").

### B. The Assignment and Consents

On or about March 8, 2020, Defendant signed the document entitled "Consent to Assignment Agreement" for Minor to assign his rights to the Proceeds under the Settlement Agreement to Plaintiff. ECF No. 79 ¶ 4; ECF No. 21-1 (the "Laggner Consent"). The Laggner Consent provided that "[t]he Consenting Parties hereby acknowledge and irrevocably consent to

2

the assignment by Minor to Thieriot of all or part of Minor's rights, title, and interest in and to the Settlement Agreement, including, but not limited to, the Proceeds." Laggner Consent § 2. The Laggner Consent was not signed by Bechtel. ECF No. 79 ¶ 5. All parties to the Settlement Agreement other than Defendant signed a separate Assignment and Consent Agreement, dated April 14, 2020. ECF No. 21-2 (the "Assignment"). On April 15, 2020, Plaintiff "chase[d] down Laggner" for his signature on the Assignment but Defendant never signed the Assignment. ECF No. 79 ¶¶ 14–16.

On July 21, 2023, Minor and Plaintiff executed a Consent to Additional Assignment which provides that "Minor hereby assigns to Thieriot, and Thieriot hereby assumes, all of Minor's rights, obligations, title and interest in and to Section 20 (Attorney's Fees) of the Settlement Agreement." ECF No. 62-12 (the "Attorney's Fees Assignment"). Section 20 of the Settlement Agreement provides: "In the event of any action or proceeding in connection with or concerning the interpretation or enforcement of this Agreement, including litigation stemming from the breach of this Agreement, the prevailing party will be entitled to recovery of its reasonable attorney's fees and costs incurred in connection therewith." Settlement Agreement § 20.

### C. The Yuan Agreement

On or around January 31, 2022, Defendant executed the document entitled, "Agreement for the Purchase and Sale of Capital Stock of Uphold Ltd" to sell 40,000 shares of common stock of Uphold Ltd. (of the 4,843,890 Uphold shares that Defendant owned at the time) for a total price of $280,000, or $7.00 per share. ECF No. 75 ¶ 5; ECF No. 79 ¶ 20; ECF No. 62-4 (the "Yuan Agreement"). The Yuan Agreement provides:

> 2.2 The obligation of the Seller to sell the Shares, and the obligation of the
> Purchaser to purchase the Shares, is subject only to the conditions set forth below

> being complied with to the satisfaction of, or waived by, the Seller or the Purchaser, as the case may be, on or before each of the Closing Dates.
>
>> 2.2.1 Delivery of Common Stock "Share Transfer Document" The Seller shall deliver to Purchaser one or more Share Transfer Agreement documents evidencing such Purchaser's Shares, duly endorsed to the Purchaser by the company.
>>
>> 2.2.2 Delivery of Purchase Price. The Seller shall have received a total cash payment of $280,000 by the Closing for representing the full purchase price to . . . [William Laggner].

Yuan Agreement § 2. James Pu, an individual based in California, purported to represent buyer Yuan Yuan in the negotiation of the Agreement for Purchase and Sale. ECF No. 75 ¶ 58; ECF No. 79 ¶ 21. Laggner did not sign an additional share transfer document pursuant to Section 2 of the Yuan Agreement. ECF No. 79 ¶ 26. Laggner also did not provide executed stock powers to Yuan. *Id.* ¶ 27.

### D. The Sale and Transfer of Shares

Yuan paid Defendant the agreed price of $280,000 via several wire transfers from a Chinese bank. ECF No. 66 ¶ 5; ECF No. 62-5. At no time did Defendant return or refuse acceptance of any of the $280,000 in funds wired by Yuan. ECF No. 66 ¶ 6. Defendant did not provide Plaintiff or Minor with written notice within three business days of January 31, 2022 that Defendant executed the "Agreement for the Purchase and Sale of Capital Stock of Uphold Ltd." ECF No. 75 ¶ 6. At no time did Defendant pay to Plaintiff or to Minor 50% of the $280,000 in funds wired by Yuan. *Id*. ¶ 7.

On June 14, 2022, Laggner filed a winding up petition against Uphold in the Grand Court of the Cayman Islands (the "Cayman Islands Litigation"). ECF No. 79 ¶ 37.

On July 13, 2022, Uphold purported to transfer 40,000 Laggner Shares to Yuan. *Id.* ¶ 32. On July 13, 2022, Uphold issued a digital share certificate showing that Yuan was the owner of

4

40,000 common shares of Uphold stock. ECF 62-7 at 15. The Certificate of Incumbency for Uphold, dated May 22, 2023, includes an attached "Register of Mortgages and Charges," which lists Defendant as a shareholder of 4,803,890 shares and Yuan as a shareholder of 40,000 shares. ECF No. 62-9. Defendant states that he still has the $280,000 he received for the transfer of 40,000 common shares of Uphold to Yuan. ECF No. 62-1 at 45:16–46:1.

### E. Procedural History

Plaintiff filed the instant action on February 3, 2023, in the Supreme Court of the State of New York, County of New York. ECF No. 1-1. The case was subsequently removed to this Court. ECF No. 1. After the close of discovery, the parties filed the instant cross-motions for summary judgment. ECF No. 61; ECF No. 68. Plaintiff moves for summary judgment seeking an award in the amount of $140,000, plus costs and expenses including attorney's fees, and pre- and post-judgment interest. ECF No. 61; ECF No. 78 at 10. Defendant seeks an order dismissing Plaintiff's Complaint. ECF No. 68; ECF No. 69.

## LEGAL STANDARD

### I. Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets her initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citation omitted). "A party may not rely on mere speculation or conjecture as to the true

5

nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports her motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences in favor of the non-moving party. *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020); *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017).

**DISCUSSION**

Applying New York law, the Court finds that Plaintiff is the valid assignee of Minor's rights under the Settlement Agreement to half of the first $750,000 of proceeds of any sales of the Laggner Shares by Defendant. Next, the Court determines that the sale of 40,000 of the Laggner Shares for $280,000 has been consummated, which triggers Defendant's obligation to pay Plaintiff $140,000. Plaintiff's right to his share of the proceeds is an issue between Plaintiff and Defendant, and as such, the Court finds it proper to resolve the instant dispute without the need to drag non-parties into this litigation. Finally, as the prevailing party, Plaintiff is entitled to an award of reasonable attorney's fees incurred in this litigation.

**I.      New York Law Applies**

The Settlement Agreement states that it is governed by New York law. Settlement Agreement § 13. Both parties presume, and no party disputes, that New York law applies. ECF No. 64 at 14–16; ECF No. 73 at 13–19; ECF No. 77 at 6–13. "[S]uch implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civ. & Env't Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)) (cleaned up); *see also Vlado v. CMFG Life Ins. Co.*, No. 23-CV-3234, 2023 WL 5591368, at *3 (S.D.N.Y. Aug. 29, 2023) (internal citations omitted) ("[T]he Court may accept the agreement of the parties without engaging in further choice of law analysis."). Thus, for purposes of the instant motions, the Court applies New York law.

**II.     Plaintiff Is the Valid Assignee of Minor's Rights to the Proceeds Under the Settlement Agreement**

Defendant argues that Plaintiff does not have standing to bring this suit because the assignment to Plaintiff of Minor's rights in the proceeds of the sale of the Laggner Shares was invalid. ECF No. 71 at 3. This argument lacks merit.

7

A valid assignment confers standing to bring suit. "[A] real party in interest who has been assigned a claim is the functional equivalent of the original plaintiff – an assignee steps into the shoes of the assignor." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 389 (2d Cir. 2021) (cleaned up). "Moreover, it is well-established that a party who has been properly assigned a right to collect upon an account is the real party in interest as to that account." *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 513 (S.D.N.Y. 2014) (internal citations omitted). The terms of the Settlement Agreement clearly gave Minor the right to receive half of the first $750,000 of proceeds of any sales of the Laggner Shares by Defendant. That is the right that Plaintiff, as assignee, asserts in this case.

The assignment from Minor or Plaintiff is valid under well-established New York contract law principles. "New York strongly disfavors anti-assignment clauses. Under New York law an assignment that violates an anti-assignment provision is nonetheless enforceable by the assignee, unless the anti-assignment clause specifically uses language to the effect that the assignee receives no rights from an improper assignment or that such assignment is void." *Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, 598 F. Supp. 3d 158, 178 (S.D.N.Y. 2022) (cleaned up); *see also Raymond A. Semente, D.C., P.C. v. Empire Healthchoice Assurance, Inc.*, 523 F. Supp. 3d 269, 278 (E.D.N.Y. 2021) ("New York law construes anti-assignment clauses narrowly."). "Under New York law, assignments are enforceable unless expressly made void, and not void unless specified otherwise." *S'holder Representative Servs. LLC v. Scribble Techs. Inc.*, No. 17-CV-2056 (PKC), 2018 WL 2356659, at *3 (S.D.N.Y. Mar. 30, 2018) (cleaned up). In other words, "[u]nder New York Law, an assignment is valid even where an agreement generally prohibits assignment, unless the agreement specifies that an assignment would be invalid or void." *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21-CV-4627 (KPF), 2022 WL

3156179, at *4 (S.D.N.Y. Aug. 8, 2022) (cleaned up); *see also* GLEN BANKS, 28 N.Y. PRAC., CONTRACT LAW §§ 15:5–6. In cases where the anti-assignment "language employed constitutes merely a personal covenant against assignments, an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the covenant" – it does not invalidate the assignment. *Brettler Tr. of Zupnick Fam. Tr. 2008 A v. Allianz Life Ins. Co. of N. Am.*, 57 F.4th 57, 63 (2d Cir. 2022); *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 18-CV-549 (BKS), 2023 WL 6037877, at *12 (N.D.N.Y. Sept. 15, 2023).

The anti-assignment clause in the Settlement Agreement does not render the assignment void. It merely provides that "[n]o Party shall assign, delegate or transfer to any person or entity its rights or responsibilities under this Settlement Agreement without the prior written consent of all other Parties." Settlement Agreement § 10. This clause does not purport to render assignments made in violation of its restriction to be void, invalid, powerless, or otherwise ineffective. It contains neither the typical "talismanic language or magic words" that render an assignment void or other language evincing a "clearly stated intent to render a party powerless to assign." *See LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*, 287 F.R.D. 230, 235 (S.D.N.Y. 2012) (internal citation omitted). Thus, the Court interprets Section 10 as a personal covenant not to assign without the consent of the other parties to the Settlement Agreement. *See Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 554–56 (S.D.N.Y. 2016) (internal citations and quotation marks omitted) ("The rule adhered to in New York regarding contractual anti-assignment clauses is that, with limited exception, contractual provisions prohibiting assignments are treated as personal covenants. An assignment made in violation of a personal covenant prohibiting assignments is enforceable, although it does give rise to a damages action against the assignor."). Even if the assignment from Minor to Plaintiff violated the personal

9

covenant – an issue the Court need not and does not address – the assignment is enforceable as a matter of law. *See id*.

Defendant's attempt to invoke another anti-assignment clause falls even more flat. Defendant points to Section 2(g) of the Settlement Agreement, which provides that "Minor agrees not to seek to transfer, assign, sell, or encumber said Shares, or any interests therein." Settlement Agreement § 2(g). Defendant conflates rights in the proceeds (which Minor assigned to Plaintiff) with rights in the shares. Plaintiff does not assert a right to the Laggner Shares themselves but, as assignee, asserts a right to the *proceeds of the sale* of the Laggner Shares. Section 2(g) is irrelevant.

As a valid assignee, Plaintiff stepped into the shoes of Minor and has standing to bring this case asserting the right to receive half of the first $750,000 of proceeds of any sales of the Laggner Shares by Defendant.

### III.   The Sale of the Laggner Shares Has Been Consummated

Although the Yuan Agreement is governed by Delaware law, *see* Yuan Agreement § 7.4, the issue of whether the sale of the Laggner Shares was "consummated" as defined in the Settlement Agreement – the trigger for Defendant's obligation to pay Plaintiff $140,000 – is a question of New York law. The Settlement Agreement provided that "Minor shall be entitled to receive half of the first $750,000 of proceeds of any sales of the Laggner Shares. For the avoidance of doubt, Minor shall be entitled to receive a maximum of $375,000 from Laggner and shall only be entitled to receive any proceeds upon the consummation of a sale of the Laggner Shares." Settlement Agreement § 2(e)(i).

10

Despite the sale of 40,000 of his shares of Uphold stock for $280,000, Defendant argues that the sale of the Laggner Shares has not been consummated. ECF No. 71 at 9–15; ECF No. 77 at 13–19; ECF No. 80 at 5–8. Defendant is wrong for several reasons.

First, Defendant sold 40,000 shares of Uphold stock. Defendant does not dispute this fact. Instead, Defendant speculates about the identity of the buyer, Yuan, alleging that she is not who she purports to be. ECF No. 77 at 22–25. Setting aside the dubiousness of Defendant's *ex post facto* theory that he was somehow duped by a buyer who paid him $280,000 in consideration, *see* ECF No. 78 at 2–3, this conjecture is irrelevant to Defendant's obligation to pay Plaintiff. Defendant sold the shares, and he has the proceeds. Defendant attempts to call into question whether the Yuan Agreement was a valid contract, yet simultaneously admits that "Laggner and an individual named Yuan Yuan entered into an Agreement for the Purchase and Sale of Capital Stock of Uphold Ltd. dated January 31, 2022." ECF No. 77 at 14; *see also* ECF No. 75 ¶ 5; ECF No. 79 ¶ 20. Defendant's theories about Yuan do not negate this admission. Moreover, Plaintiff asserts a claim for breach of the Settlement Agreement, not of the Yuan Agreement. Whether Defendant breached the Settlement Agreement hinges on whether he sold the Laggner Shares, not the identity of the person to whom he sold them.

Second, the shares Laggner sold were the Laggner Shares. Defendant again attempts to muddy the waters by hypothesizing that he could have successfully pulled a bait-and-switch by delivering to Yuan some other shares of Uphold stock that were not the Laggner Shares. ECF No. 78 at 4; ECF No. 79 ¶¶ 46–47. The Yuan Sale Agreement unambiguously refers to the 4,843,890 shares "currently owned by Seller" as of January 31, 2022, *see* Yuan Agreement at 1, which Defendant admits are the only shares of Uphold he has ever owned. ECF No. 66 ¶ 4. Those shares are indisputably the Laggner Shares.

Third, the Court finds that the sale of the Laggner Shares has been consummated. Because the term "consummated" is not defined in the Settlement Agreement, it is given its ordinary meaning, in the context of the contract. *See U.S. Underwriters Ins. Co. v. Kenfa Madison, LLC*, No. 20-CV-2761 (NGG), 2023 WL 5613299, at *6 (E.D.N.Y. Aug. 30, 2023) (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)) ("Under New York law, words and phrases in a contract should be given their plain meaning, and 'the contract should be construed so as to give full meaning and effect to all of its provisions.'"). The parties agree that "to consummate" a sale means to complete, perfect, or finish it. ECF No. 64 at 18; ECF No. 71 at 10.

The record reflects that the sale of the Laggner Shares has been consummated. Defendant executed a contract to sell 40,000 shares of his 4,843,890 Laggner Shares for $280,000. The buyer paid Defendant the $280,000, and Defendant kept the money. Uphold issued a digital share certificate showing that Yuan was the owner of 40,000 common shares of Uphold stock. The Certificate of Incumbency for Uphold includes an attached "Register of Mortgages and Charges," which lists Defendant as a Shareholder of 4,803,890 shares, and lists Yuan as a Shareholder of 40,000 shares.

Fourth, Defendant's objections to consideration of the latter two Uphold records are without merit. Defendant cursorily attempts to call into question the authenticity and admissibility of these records. *See* ECF No. 75 ¶¶ 15–16. These objections are overruled.

At summary judgment, "records may be properly considered in the absence of any reasons shown to suggest that they are not genuine." *Castagna v. Sansom*, No. 21-CV-1663 (JAM), 2024 WL 197462, at *1 n.1 (D. Conn. Jan. 18, 2024) (citing *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 93–94 (2d Cir. 2019)). "[A] document is properly

authenticated if a reasonable juror could find in favor of authenticity." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (internal citation omitted). "The bar for authentication of evidence is not particularly high and the proponent need not rule out all possibilities inconsistent with authenticity." *Hoffman v. Walmart, Inc.*, No. 21-CV-1729 (SVN), 2023 WL 6929208, at *4 (D. Conn. Oct. 19, 2023) (cleaned up). The 2010 amendments to Federal Rule of Civil Procedure 56 removed the "unequivocal requirement" that documents submitted in connection with summary judgment be authenticated. *Sanmina Corp. v. Dialight plc*, No. 19-CV-11710 (KPF), 2023 WL 9022882, at *6 (S.D.N.Y. Dec. 29, 2023) (internal citation omitted). As amended, Rule 56 merely requires that supporting documents "be in a form that, if authenticated, could be admissible at trial." *Id*. (citing Fed. R. Civ. P. 56(c)(2)). Declarations of attorneys frequently function as vehicles to introduce evidence produced in discovery into the record and may suffice to authenticate documents at the summary judgment stage. *Id*. (internal citation omitted).

Here, the records in question were introduced via attorney declaration. *See* ECF No. 62 ¶¶ 8, 10. Defendant does not provide a substantive basis for his admissibility objection "beyond merely stating in conclusory fashion" that the records are not admissible. *Sanmina Corp*, 2023 WL 9022882, at *6. Defendant's arguments about the legal effect of the share transfer, addressed below, do not pertain to the admissibility of the Uphold records. Thus, the Court properly considers the records in question in light of "Rule 56(c)'s low bar for authentication." *Id*. To the extent Defendant intended to make a hearsay objection – which he does not state – he provides no reason that the Uphold records could not be shown at trial to be records "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit." Fed. R. of Evid. 803(6).

Fifth, Defendant argues that the sale of the Laggner Shares has not been consummated because *he* failed to perform certain pre-closing conditions that *he, as seller*, was obligated to perform. For example, Defendant attempts to rely on his own failure to deliver a separate "share transfer document" other than the Yuan Agreement to argue that the sale remains unconsummated. ECF No. 71 at 10–11; ECF No. 77 at 15.

Once again, well-established New York contract law principles foreclose Defendant's belated attempt to escape the consequences of his own actions. A contract party that caused the non-occurrence of a contractual condition cannot rely on the non-occurrence of that condition to selectively avoid its contractual duties. "[I]t is a well-settled and salutary rule that a party cannot insist upon a condition precedent, when its nonperformance has been caused by himself." *Mullinix v. Mount Sinai Sch. of Med.*, No. 12-CV-8659 (PKC), 2015 WL 328050, at *3 (S.D.N.Y. Jan. 23, 2015) (quoting *A.H.A. Gen. Const., Inc. v. N.Y.C. Hous. Auth.*, 699 N.E.2d 368, 374 (N.Y. 1998)); *see also* GLEN BANKS, 28 N.Y. PRAC., CONTRACT LAW § 20:20. "The condition is to be deemed satisfied or excused if the party relying on the non-occurrence of the condition precedent was instrumental in preventing or frustrating its occurrence." *Mullinix*, 2015 WL 328050, at *3 (internal citation and quotation marks omitted); *see also In re Bankers Tr. Co.*, 450 F.3d 121, 127 (2d Cir. 2006) (internal citation omitted) ("One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised."). Assuming that the provisions of the Yuan Agreement that Defendant points to were conditions precedent, Defendant cannot "insist upon enforcement of a condition precedent that [he himself] decided to disregard." *Bruce Kirby, Inc. v.*

14

*Laserperformance (Eur.) Ltd.*, No. 13-CV-297 (JAM), 2016 WL 4275576, at *4 (D. Conn. Aug. 12, 2016). That Defendant failed to perform certain of his duties provides no basis to retroactively deem the sale unconsummated where it is undisputed that Defendant has the proceeds and the buyer has the shares. Equally unavailing is Defendant's attempt to cast blame on Uphold for effectuating the share transfer notwithstanding *his failure* to provide the "share transfer" document. *See* ECF No. 71 at 12–13; ECF No. 77 at 17–18.

Finally, Defendant argues that his filing of a winding up petition against Uphold in the Cayman Islands renders the sale unconsummated. ECF No. 71 at 14–15; ECF No. 77 at 18–19. Defendant's premise is that if he prevails in the Cayman Islands Litigation, then the 2022 sale of the Laggner Shares "will be void." ECF No. 77 at 19. Even assuming this premise is true, the possibility that the Cayman court may invalidate the sale in the future does not change the reality that the sale occurred. Nor does it change the fact that Defendant pocketed the cash from the sale, half of which he owes to Plaintiff.

### IV.  Plaintiff Did Not Fail to Join Indispensable Parties

Finally, Defendant seeks to dismiss this case because Plaintiff failed to join claimed indispensable parties to this litigation, namely, the other parties to the Settlement Agreement. ECF No. 80 at 8–10. The premise of Defendant's argument is that parties to a contract must be joined to a breach of contract action. ECF No. 77 at 20–21. Defendant's argument fails for several reasons.

First, the Second Circuit has rejected "a bright-line rule that all parties to a contract are indispensable . . . ." *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159–60 (2d Cir. 2009) (holding that absent party that was a party to the contract between plaintiff and defendant was not an indispensable party).

Second, to address the instant motions, the Court need not – and has not – opined on the issue of whether all parties to the Settlement Agreement consented to the assignment from Minor to Plaintiff. The Court, as set forth above, found that Plaintiff is the valid assignee of Minor's rights under the Settlement Agreement without drawing conclusions as to the rights or obligations of any other party to the Settlement Agreement.

Third, the Court's conclusion that the sale of the Laggner Shares has been consummated does not "as a practical matter" disturb the rights and obligations of any non-party to this proceeding. Fed. R. Civ. P. 19(a)(1)(B)(i).

Fourth, the Court can afford relief to the parties to this proceeding without joining any non-parties. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) (cleaned up) (stating that a party is a necessary party under Federal Rule of Civil Procedure 19(a)(1)(A) "only if in that party's absence complete relief cannot be accorded among those already parties"). The Court can afford relief here without "delving into the validity of the contract" as it pertains to the non-parties. *Pullman v. Alpha Media Pub., Inc.*, No. 12-CV-1924 (PAC) (SN), 2013 WL 1290409, at *32 (S.D.N.Y. Jan. 11, 2013), *report and recommendation adopted*, No. 12-CV-1924 (PAC), 2013 WL 1286144 (S.D.N.Y. Mar. 28, 2013), *aff'd*, 624 F. App'x 774 (2d Cir. 2015).

Fifth, no non-party has appeared to claim an interest in this litigation. *See* Fed. R. Civ. P. 19(a)(1)(B) (requiring that the absent party "claims an interest relating to the subject of the action"); *Camali TV, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 22-CV-6278 (HG), 2024 WL 22742, at *4 (E.D.N.Y. Jan. 2, 2024) (quoting *Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020)) ("The 'absent party must claim an interest' in an ongoing litigation for

16

that party to be considered necessary; an existing party may not insist on the absent party's behalf that such an interest exists.").

Plaintiff's right to half the $280,000 in proceeds in Defendant's possession is an issue between Plaintiff and Defendant. It is proper for the Court to resolve this dispute without the need to drag non-parties into this litigation.

## V.      Plaintiff Is Entitled to Reasonable Attorney's Fees

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal citations omitted). The contract here clearly provided for reasonable attorneys' fees to the prevailing party. *See* Settlement Agreement § 20 ("In the event of any action or proceeding in connection with or concerning the interpretation or enforcement of this Agreement, including litigation stemming from the breach of this Agreement, the prevailing party will be entitled to recovery of its reasonable attorney's fees and costs incurred in connection therewith."). For the same reasons that the assignment to Plaintiff of Minor's rights in the proceeds of the sale of the Laggner Shares was valid, *see supra* Section II, so too was the assignment of Minor's rights to attorney's fees. Thus, as the prevailing party, Plaintiff is entitled to an award of reasonable attorney's fees incurred in this litigation.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED. Plaintiff is entitled to an award of damages in the amount of $140,000 pursuant to Section 2(e)(i) of the May 16, 2019 Settlement Agreement (ECF No. 62-3). Plaintiff shall submit a motion for attorneys' fees and costs by

17

**September 18, 2024**, and Defendant shall have until **October 2, 2024** to respond. The parties shall also address in their papers the date from which pre-judgment interest should be calculated.

The Clerk of Court is directed to terminate ECF Nos. 61 and 68.

Dated: August 19, 2024
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge
